**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| BOBBY MORRIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br><br>ACME ELECTRIC MOTOR, INC., D/B/A ACME TOOLS,<br><br>Defendant. | No. 4:25-cv-00020<br>District Judge Matthew T. Schelp |

**DEFENDANT ACME ELECTRIC MOTOR, INC.'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO STAY THE CASE PENDING ARBITRATION PURSUANT TO FAA SECTION 3**

Defendant Acme Electric Motor, Inc. d/b/a Acme Tools ("Acme Tools"), by and through its attorneys, respectfully submits the following Memorandum in Support of Its Motion to Stay the Case Pending Arbitration Pursuant to FAA Section 3.[1]

**I.    INTRODUCTION**

On January 6, 2025, plaintiff Bobby Morris ("Morris" or "Plaintiff") filed his lawsuit against Acme Tools asserting two claims for alleged breaches of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, on behalf of himself and two proposed classes of individuals allegedly similarly situated. *See generally* ECF No. 1. Plaintiff alleges that his phone number is registered on the National Do Not Call Registry and that he received multiple unsolicited

---

[1] Defendant's motion stays its time to answer or otherwise respond to Plaintiff's Complaint. *Carlisle v. CitiMortgage*, 2007 WL 3232257, at *1 (E.D. Mo. Oct. 30, 2007) ("Courts addressing this issue consistently allow defendants to file motions to compel arbitration instead of answering a complaint.") (citing *Faber v. Menard, Inc.*, F.3d 1048, 1051 (8th Cir. 2004)). Defendant reserves all dismissal arguments pending arbitration resolution. *See Gramercy Distressed Opportunity Fund II L.P. v. Piazza*, 2023 WL 6296948, at *2 (10th Cir. May 10, 2023) (reasoning that dismissal arguments are preserved pending a motion to stay under FAA § 3).

marketing texts from Acme Tools in violation of the TCPA in November 2024. *Id.* ¶ 25-27, 31. Plaintiff's claims lack legal and factual merit for many reasons, but there is a threshold matter that prevents his claims from being litigated in this Court. Before the alleged conduct at issue in this Complaint, Plaintiff signed up on Acme Tools' website for a gift card giveaway and thereafter expressly consented to receive promotional text messages from Acme Tools. By doing so, Plaintiff agreed to Acme Tools' text messaging terms and conditions, which require Plaintiff to resolve any claims arising from his receipt of text messages in arbitration. Thus, Acme Tools' motion should be granted, and this case should be stayed.

## II.    BACKGROUND FACTS

Defendant Acme Tools is a tool and equipment retailer with its headquarters and principal place of business in North Dakota. ECF No. 1 ¶ 6. As part of its business, Acme Tools occasionally runs giveaways, promotions, and advertisement campaigns. *See* Declaration of Dean Spicer, ¶ 2, 7. On November 26, 2022, Plaintiff visited http://www.acmetools.com/ and signed up to receive text messages from Acme Tools. *Id.* ¶ 6, Ex. 1. He was shown the below promotional image regarding Acme Tools' text messaging marketing and promotional program (Acme Tools' "SMS Program"):



*Id.* ¶ 7, Ex. 1.  Plaintiff entered in his phone number and selected "ENTER TO WIN NOW,"

whereby he signed up to receive promotional text messages from Acme Tools.  *Id.* ¶ 8, Ex. 1.

Plaintiff then received the following text:

> *Acme Tools: Reply Y to subscribe to recurring automated personalized marketing alerts (e.g. cart reminders) from Acme Tools.*

Spicer Decl. ¶ 9, Ex. 1.  Plaintiff immediately texted "Y" in response to confirm his enrollment in

Acme Tools' text marketing.  *Id.* ¶ 10, Ex. 1.

As the above promotional image indicates, Plaintiff was shown the following language

prior to signing up to receive text messages:

> By signing up via text, you agree to receive recurring automated promotional and personalized marketing text messages (e.g., cart reminders) from Acme Tools at the cell number used when signing up. Consent is not a condition of any purchase. Reply HELP for help and STOP to cancel. Msg frequency varies. Msg and data rates may apply. View <u>Terms</u>, <u>Privacy</u>, & <u>Giveaway Terms</u>.

*Id.* ¶ 12, Ex. 1.

The "Terms" hyperlink directs users to Acme Tools' Messaging Terms and Conditions ("Messaging Terms") at the following address http://attnl.tv/t/SF8. *Id.* ¶ 13, Ex. 2.  The Messaging Terms contain an arbitration clause under its "Dispute Resolution" section, which states, in relevant part:

> In the interest of resolving disputes between you and Acme Tools in the most expedient and cost effective manner, you and Acme Tools agree that any dispute arising out of or in any way related to these messaging terms and conditions ("Messaging Terms") or your receipt of text messages from Acme Tools or its service providers will be resolved by binding arbitration.

Spicer Decl. ¶ 14, Ex. 2.  The Messaging Terms provide that "the arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement."  *Id.* ¶ 15, Ex. 2.  They also expressly incorporate the Federal Arbitration Act and the Arbitration Rules of the American Arbitration Act as follows: "[Any arbitration between you and Acme Tools will be governed by the Federal Arbitration Act and the Commercial Dispute Resolution Procedures and Supplementary Procedures for Consumer Related Disputes (collectively, 'AAA Rules') of the American Arbitration Association ('AAA')[.]" *Id.* 13, Ex. 2.

Additionally, the Messaging Terms contain two class action waiver provisions where Plaintiff expressly waived his ability to pursue class claims.  The Messaging Terms state:

> YOU AND ACME TOOLS AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDINGS.

*Id.* ¶ 13, Ex. 2 (emphasis in original).

> BY AGREEING TO THESE MESSAGING TERMS, YOU AND ACME TOOLS ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION AND THAT THESE MESSAGING

TERMS SHALL BE SUBJECT TO AND GOVERNED BY THE FEDERAL ARBITRATION ACT.

*Id.* ¶ 16, Ex. 2 (emphasis in original).

Plaintiff received marketing texts periodically from Acme Tools starting when he voluntarily consented to receive them on November 26, 2022 through December 30, 2024 when Plaintiff's phone number was manually opted out of Acme Tools' SMS Program.  Spicer Decl. ¶ 18, Ex. 1.  Acme Tools never received a "STOP" message from the Plaintiff or otherwise was notified or contacted by Plaintiff indicating that he was withdrawing his consent to receive the texts of the SMS Program.  *Id.* ¶ 17, Ex. 1.

## III.    ARGUMENT

### A.    The Arbitration Clause Contained Within Acme Tools' Messaging Terms Is Enforceable and Arbitration Should Be Compelled.

#### 1.    *The Federal Arbitration Act governs this dispute and strongly favors compelling arbitration.*

The Federal Arbitration Act ("FAA") governs arbitration agreements involving interstate commerce and the Messaging Terms that Plaintiff agreed to expressly provide that "[a]ny arbitration between you and Acme Tools will be governed by the Federal Arbitration Act[.]".  *Hoffman v. Cargill, Inc.*, 236 F.3d 458, 461 (8th Cir. 2001); 9 U.S.C. § 1, *et seq*; Spicer Decl. ¶ 13, Ex. 2.  Another portion of the Messaging Terms notes "THAT THESE MESSAGING TERMS SHALL BE SUBJECT TO AND GOVERNED BY THE FEDERAL ARBITRATION ACT." Spicer Decl. ¶ 13, Ex. 2 (emphasis in original).  There is also no dispute here that the arbitration agreement involves interstate commerce because, as alleged in the Complaint, Plaintiff resides in Missouri and the text messages promoting Acme Tools' products were sent by Acme Tools, based in North Dakota.  ECF No. 1 ¶ 5-6;  *Hendrik Delivery Serv., Inc. v. St. Louis Post-Dispatch LLC*, 4:07CV1516 JCH, 2007 WL 3071827, at *3 (applying the FAA because, in part,

the arbitration agreement was between parties of different states).  As such, the FAA applies to the Messaging Terms agreed to by the Plaintiff in this action.

The FAA provides that a "written provision in […] a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such conduct or transaction […] shall be valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2.  The FAA requires a court to stay any action commenced which is subject to an arbitration agreement when it states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had[.]

9 U.S.C. § 3.

Congress, when passing the FAA, had the express purpose of "revers[ing] the longstanding judicial hostility to arbitrate agreements … and to place arbitration agreements upon the same footing as other contracts."  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (internal quotation omitted).  The FAA "reflects a liberal policy favoring arbitration."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

When a party seeks to compel arbitration pursuant to the FAA, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district court *shall* direct the parties to proceed to arbitration on issues as to which an arbitration has been signed." *Pierce v. Plains Commerce Bank*, No. 11-CV-01222 WBP, 2012 WL 5992730, at *2 (W.D. Mo. Nov. 29, 2012) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original)).  On such a motion, where there is no delegation clause, "a district court's role is limited to deciding (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Id.* (quoting *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d

868, 871 (8th Cir. 2004)). However, as discussed more fully below, this cases involves a delegation clause; in other words, the parties agreed that these threshold issues of arbitrability should be decided by an arbitrator. Accordingly, this Court should issue an order directing Plaintiff to pursue his claims via individual arbitration.

### 2.    *Threshold issues on arbitrability should be determined by an arbitrator.*

"Parties are free to agree to arbitrate threshold or 'gateway' questions of arbitrability." *Murphy v. Oracle Am., Inc.*, No. 4:19-CV-1207 JHC, 2019 WL 2525727, at *2 (E.D. Mo June 19, 2019) (internal citations omitted). "These gateway questions may include determining the validity of the arbitration agreement itself." *Klutho v. JK Powerhouse, LLC*, 542 F. Supp. 3d 893, 896 (E.D. Mo. 2021) (quoting *Shockley v. PrimeLending*, 929 F.3d 1012, 1018 (8th Cir. 2019)). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 68 (2019).

This applies to this case because Acme Tools' Messaging Terms state in relevant part that "the arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement." Spice Decl. ¶ 15, Ex. 2. Such a contractual provision is binding on the parties and any challenge to the enforceability or applicability of the arbitration clause must be determined by an arbitrator. *See Henry Schein, Inc.* 586 U.S. at 68; *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-9 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."); *Klutho*, 542 F. Supp. 3d at 897 ("Ultimately, however, it is not for this Court to decide whether [Plaintiff's] claims are arbitrable. The delegation provision […] clearly and unmistakably evinces

the parties' intent to arbitrate this threshold question of arbitrability."). As such, the Court should compel arbitration.

Further, the Messaging Terms also incorporate the rules of the American Arbitration Association ("AAA"), which independently warrants compelling arbitration on any threshold issues. Spicer Decl. ¶ 13, Ex. 2 ("Any arbitration between you and Acme Tools will be governed by the Federal Arbitration Act and the Commercial Dispute Resolution Procedures and Supplementary Procedures for Consumer Related Disputes (collectively, 'AAA Rules') of the American Arbitration Association ('AAA')[.]"). Rule 7(a) of the AAA's Commercial Arbitration Rules states that "[t]he arbitrator shall have the power to rule on his or own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim" with Rule 7(b) stating that the "arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part."[2] The Eighth Circuit in *Fallo v. High-Tech Institute* determined that the express incorporation of the AAA Rules within an arbitration agreement was "a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court." 559 F.3d 874, 878 (8th Cir. 2009). This is a separate and independent basis that warrants staying this case pending arbitration.

### 3. *Even if this Court examines arbitrability, Plaintiff voluntarily agreed to be bound by the arbitration clause and the clause directly covers Plaintiff's asserted claims.*

Even if the arbitration provisions in the Messaging Terms did not delegate threshold issues to an arbitrator, the FAA still "limits a district court's initial role in any challenge to an arbitration agreement to deciding whether the making of the agreement for arbitration or the failure to comply

---

[2] AAA's Commercial Arbitration Rules, https://www.adr.org/sites/default/files/CommercialRules_Web_1.pdf (last accessed February 24, 2025).

therewith is at issue." *MedCam, Inc. v. MCNC*, 414 F. 3d 972, 974 (8th Cir. 2005).  The Eighth Circuit has "refined this inquiry to asking 1) whether the agreement to arbitrate was validly made and 2) whether the arbitration agreement applies to the dispute at hand, *i.e.,* whether the dispute *falls within the scope* of the arbitration agreement." *Id.* (emphasis in the original; citation omitted).  Plaintiff expressly agreed to the Messaging Terms when he voluntarily opted in to receive marketing text messages and his claims under the TCPA are directly covered by the arbitration provisions contained in the Messaging Terms.

First, a valid agreement to arbitrate exists.  The FAA states that a "written provision in […] a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such conduct or transaction […] shall be valid, irrevocable, and enforceable[.]"  9 U.S.C. § 2.  Courts routinely enforce online terms and conditions which are available on websites when the plaintiff had reasonable notice, whether actual or inquiry notice, of the terms and conditions and plaintiff manifested assent to be bound to them.  *Hennessey v. Kohl's Corporation*, 571 F. Supp. 3d 1060, 1070 (E.D. Mo. 2021) (determining that plaintiff had inquiry notice of a website's legal terms section when a hyperlink to that agreement was located above the account creation page);  *Margulis v. HomeAdvisor, Inc.*, WL 4673783, at *4 (E.D. Mo. Sept. 12, 2020) (finding that a valid arbitration agreement existed when plaintiff submitted a service request on defendant's website by selecting a button while the screen displayed hyperlinks to the site's terms and conditions); *Major v. McCallister*, 302 S.W.3d 227, 230 (Mo. Ct. App. 2009) (affirming the enforceability of website's terms and conditions); *see also Jewel Jordan & Michael Walsh v. Best Buy Co.*,  2025 WL 580894, at *4 (D. Minn. Feb. 21, 2025) (enforcing website's agreement as the terms were reasonably conspicuous to put the plaintiff on inquiry notice when the term's hyperlink was listed above the "place your order" button); *Courtright v. Epic*

*Games, Inc.*, 2025 WL 558560, at *17 (W.D. Mo. Feb. 13, 2025) (enforcing an arbitration clause within a terms of service when the terms were hyperlinked in a video game's login page and game-selection screen).

Here, Plaintiff clearly manifested his assent to be bound by Acme Tools' Messaging Terms including the arbitration provisions.  Plaintiff accessed Acme Tools' website and was prompted with a promotional page offering the chance to win a $599 gift card if he signed up for Acme Tools' SMS Program.  Spicer Decl. ¶ 6-7, Ex. 1.  The page stated that:

> By signing up via text, you agree to receive recurring automated promotional and personalized marketing text messages (e.g., cart reminders) from Acme Tools at the cell number used when signing up. Consent is not a condition of any purchase. Reply HELP for help and STOP to cancel. Msg frequency varies. Msg and data rates may apply. View <u>Terms</u>, <u>Privacy</u>, & <u>Giveaway Terms</u>.

Acme Tools' Messaging Terms containing the arbitration provisions were hyperlinked, underlined and accessible to Plaintiff so that he had both actual and inquiry notice of them.  He then selected "ENTER TO WIN NOW when you sign up for email and texts" button and entered in his phone number whereby he first manifested his assent to be bound to the Messaging Terms.  *Id.* ¶ 8, Ex. 1.  Plaintiff then received a text message stating: "Acme Tools: Reply Y to subscribe to recurring automated personalized marketing alerts (e.g. cart reminders) from Acme Tools[]" to which he manifested his assent to be bound by the Messaging Terms a second time by responding "Y" to confirm his enrollment.  *Id.* ¶ 9-10, Ex. 1.[3]

The cases of *Derriman v. Mizzen and Main LLC*, 710 F. Supp. 3d 1129 (M.D. Fla. 2023), and *Kravets v. Anthropologie, Inc.*, No. 22-CV-60443 Bloom/Valle, 2022 WL 1978712 (S.D. Fla. 2022) are instructive.  In both cases, the courts granted defendant's motion to compel arbitration

---

[3] In compliance with "best practices" endorsed by the Federal Communications Commission and industry groups, Acme Tools employs a double opt-in process when customers sign up to receive text messages, pursuant to which customers will not receive text messages from Acme Tools unless they complete both parts of the process.

based on substantially similar terms and conditions.  In *Derriman*, the plaintiff received a promotional image for 15% off his next order if he signed up for text messages with a hyperlink to the messaging terms present.  *Derriman*, 710 F. Supp. 3d at 1139.  Plaintiff selected the enroll button and sent a confirmation text to confirm his enrollment.  *Id.* at 1140.  The court in *Derriman* determined this to be a binding agreement and that the plaintiff manifested his consent twice, the first time when he selected the discount button and the second when he sent the confirmation text. *Id.* at 1141-42.  An almost identical fact pattern occurred in *Kravets* where the court determined that the arbitration provision was binding in part because "considering the 'double-opt in' process that required [p]laintiff's affirmative response in the form of a text, that [p]laintiff understood the legal significance of her actions and agreed to the Text Terms and the Arbitration Provisions within the Text Terms."  *Kravets*, 2022 WL 1978712, at *6.  Similarly, Plaintiff in this case has assented to be bound by the Messaging Terms via a double-opt in process, and the Messaging Terms should likewise be binding on him.

Second, the Messaging Terms encompasses Plaintiff's TCPA claims.  When determining whether an arbitration provision covers a specific claim, courts, in furtherance of the intent of the FAA, broadly interpret such provisions.  *Zetor N. Am. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017) ("The liberal federal policy of favoring arbitration agreements requires that a district court, faced with a broad arbitration clause send a claim to arbitration as long as the underlying factual allegations simply touch matters covered by the arbitration provision") (internal quotations and citations omitted); *Zean v. Comcast Broadband Security, LLC*, 322 F. Supp. 3d 913, 919 (D. Minn. 2018) ("Arbitration provisions are broadly enforced unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (internal quotations and citations omitted).  It is the party resisting arbitration which must prove

that the claim at issue is unsuitable. *Green Tree Fin. Corp.*, 531 U.S. at 91; *Zean*, 322 F. Supp. 3d at 919.

Here, Acme Tools' Messaging Terms directly cover Plaintiff's TCPA claims as the agreement states that arbitration is required for "any dispute arising out of or in any way related to these messaging terms and conditions or your receipt of text messages from Acme Tools or its service providers[.]" Spicer Decl. ¶ 13, Ex. 2. As the TCPA claims necessarily depend on Plaintiff's receipt of text messages from Acme Tools or its service providers, these claims are within the scope of the Messaging Terms arbitration provisions.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Acme Electric Motor, Inc. d/b/a Acme Tools respectfully requests that this Court stay the case pending arbitration and grant Defendant such other relief as the Court deems just and proper.

Dated: February 25, 2025                                 Respectfully submitted,

                                                                    By:    */s/ Blaine C. Kimrey*
                                                                              One of Its Attorneys

Blaine C. Kimrey
bkimrey@vedderprice.com
Anthony J. Ashley (*pro hac vice* forthcoming)
aashley@vedderprice.com
Bryan Clark (*pro hac vice* forthcoming)
bclark@vedderprice.com
Dylan H. Cattie (*pro hac vice* forthcoming)
dcattie@vedderprice.com
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T:  +1 312 609 7500

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 25, 2025, the foregoing **Defendant Acme Electric Motor, Inc.'s Memorandum in Support of Motion to Stay the Case Pending Arbitration Pursuant FAA Section 3** was electronically filed with the Clerk of the Court using the ECF system that will send notification of the filing to all parties of record.

*/s/ Blaine C. Kimrey*