# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| BOBBY MORRIS, individually and on behalf of all others similarly situated, | Case No.   25-cv-20 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| ACME ELECTRIC MOTOR, INC. D/B/A ACME TOOLS | |
| Defendant. | |

# PLAINTIFF'S RESPONSE IN OPPOSITION TO
# DEFENDANT'S MOTION TO STAY CASE AND COMPEL ARBITRATION

## INTRODUCTION

Defendant Acme Electric Motor, Inc. has filed a motion to compel arbitration based on a purported website visit premised on an illegal lottery that Mr. Morris never visited or submitted his information to. Because the website constitutes an illegal lottery and Mr. Morris did not agree to arbitrate his claims against Acme, its motion should be denied.

## BACKGROUND

This case concerns text messages that the Plaintiff never consented to and asked to stop, and which were therefore made in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (hereinafter referred to as the "TCPA") by the Defendant Acme to market various power tools and products. Defendant Acme seeks to avoid this lawsuit by compelling arbitration based on putative submission of the Plaintiff's telephone number in 2022 on a website offering an entry to win a $599 gift card. In support of its motion to compel arbitration, Acme has submitted supplementary materials, whereby it contends that someone, not the Plaintiff, submitted their phone number and texted "Y" to opt in to receive text messages from Acme based on the website constituting an illegal lottery. But the website did not collect any of the Plaintiff's information, and the Plaintiff has submitted a sworn declaration of his own stating that he never visited the website alleged, had no notice of any arbitration provision, and certainly did not agree to arbitrate any claims. In sum, Mr. Morris had no knowledge of, never agreed to, and would never agree to, arbitrate his claims against Acme.

## LEGAL STANDARD

In evaluating a motion to compel arbitration in a TCPA case, the Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 *et seq*., governs the enforceability of an arbitration agreement. That statute commands that before compelling arbitration of a dispute, the Court must first be satisfied that

the parties agreed to arbitrate that dispute. 9 U.S.C. § 4 (directing that courts must direct the parties to arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue"). That issue is for the court, not the arbitrator, to decide, even when there is a valid delegation provision. *GP3 II, LLC v. Litong Cap., LLC*, 35 F.4th 1124, 1126 (8th Cir. 2022). When a motion to compel arbitration is brought by a party, courts must first determine whether the parties agreed to arbitrate, and, if so, then what their arbitration agreement covered. *BSI Grp. LLC v. EZBanc Corp*, 122 F.4th 712, 715 (8th Cir. 2024). If the record shows a "material issue of fact on whether the parties had an agreement to arbitrate," the issue must be remanded for jury trial under Section 4. *Id.* The party seeking to compel arbitration bears the burden of proving a valid agreement to arbitrate. *Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 851 (8th Cir. 2022). It is only when the moving party meets that burden that the court will allow an arbitrator to determine scope. *JES Farms P'ship v. Indigo Ag Inc.,* 116 F.4th 733, 736 (8th Cir. 2024).

## THERE IS NO AGREEMENT TO ARBITRATE

**A.     The website is an illegal lottery. The arbitration contract is therefore illegal and unenforceable, and the parties had no contract and no arbitration agreement.**

Defendant Acme was running an illegal lottery in Missouri (and across the country). On its website, by its own admission, it announces that, in exchange for providing a person's "Mobile Number" (and seemingly email address as well) in order to receive marketing messages from Acme, allegedly agreeing to arbitrate claims, and giving up their right to file a class action or jury trial against Acme, they will be entered into winning a "$599 Acme Tools Gift Card." In other words, if a customer (1) turns over their personal identifying information, (2) agrees to receive automated promotional marketing text messages, and (3) agrees to terms and conditions containing an arbitration clause, class action, and jury trial waivers, (4) they are eligible to be selected randomly, (5) to win a $599 Acme Tools Gift Card. In other words, Acme was lulling its customers in Missouri to give up their personal identifying information and consent to receiving

advertising, as well as giving up their legal rights to sue Acme (i.e. consideration) in exchange for the chance to win (i.e. random selection) a $599 gift card (i.e. a prize).

That is a lottery. RSMo § 572.010(7); MO. CONST. ART. III, § 39.

And it is indisputably an illegal lottery. *Id.* (defining a lottery as an "unlawful gambling scheme in which for a consideration the participants are given an opportunity to win something of value, the award of which is determined by chance.") Under unambiguous Missouri law, all lotteries in Missouri must be run or authorized by the state, and any "sweepstakes" that contain all three elements of a lottery are unlawful lotteries. *Id.* The Missouri Constitution governs many aspects of the Missouri Lottery, including the use of the funds, the minimum prizes, and the establishment of the State Lottery Commission. MO. CONST. ART. III, § 39(b).

Acme's lottery is not a lawful sweepstakes but rather an unlawful lottery, which makes the contract unlawful. It has been well-settled in Missouri that there can be no contract and no recovery upon a ticket in an illegal lottery. *Sprague v. Rooney*, 16 S.W. 505, 508 (Mo. 1891). The operation of an unlawful lottery also constitutes an unfair or deceptive practice under Missouri's MPA. *See State v. Reader's Dig. Ass'n, Inc.*, 527 S.W.2d 355, 361 (Mo. 1975); *FTC v. Next-Gen, Inc.*, No. 4:18-CV-00128-DGK, 2018 WL 5310414, at *5 (W.D. Mo. Sept. 10, 2018) (holding plaintiff adequately stated an MMPA claim based on a deceptive "sweepstakes").

An illegal contract is void and unenforceable as against public policy under Missouri law. *Twiehaus v. Rosner*, 245 S.W.2d 107, 113 (Mo. 1952). As a result, any arbitration agreement premised on that very same illegal contract is void. *Teamsters Loc. Union 682 v. KCI Const. Co.*, 384 F.3d 532, 540 (8th Cir. 2004) (reasoning that if a contract is unlawful, an arbitration award premised on it cannot be enforced); *accord ORF Const., Inc. v. Black Jack Fire Prot. Dist.*, 239 S.W.3d 685, 687 (Mo. Ct. App. 2007) (refusing to enforce arbitration clause in a contract that

failed to satisfy statutory criteria). After all, "[a]rbitration is a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010), and parties to a contract cannot consent to contract to that which is illegal. *Twiehaus*, 245 S.W.2d at 115. This is especially so in cases such as here, where consumer protection statutes render the underlying contract unlawful. *See Toce v. Rentch*, No. 17-CV-0603-AJB-BLM, 2018 WL 5994598, at *3 (S.D. Cal. Nov. 15, 2018) (refusing to enforce unlawful attorney-client contract procured by illegal online lead generation); *Trahan v. Allstate Vehicle & Prop. Ins. Co.*, No. 2:22-CV-03604, 2023 WL 7413092, at *3 (W.D. La. Nov. 9, 2023) (same).

As the party seeking to arbitrate, Defendant bears the burden of demonstrating, at the same level as at summary judgment, *both* that legally valid arbitration agreement exists *and* also that the *Plaintiff himself* agreed to be bound by the clause of which he had adequate legal notice, both points which will be addressed below. *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 329 (3d Cir. 2022) ("Because it is plausible that a number of the pharmacies were never given the terms of their Provider Agreements, it is likewise plausible that holding the pharmacies to the arbitration agreements contained therein would be procedurally unconscionable.").

The Supreme Court recently addressed the proper procedure to follow when conflicts arise as to the enforceability of arbitration contracts. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 143 (2024). The Supreme Court held that the first question in any arbitration dispute must be what the parties agreed to. *Id.* at 145. The Supreme Court clarified that *this* "fundamental" question is one for the *court*, not the arbitrator, to decide, and is driven by contractual interpretation principles under state contract law. *Id.* In *Coinbase*, the Supreme Court reaffirmed that "where, as here, a challenge applies "equally" to the whole contract and to an arbitration or delegation provision, a *court* must address that challenge." *Id.* at 151 (*quoting Rent-A-Ctr., W., Inc. v.*

*Jackson,* 561 U.S. 63, 71 (2010)). The Court went on to explain that in such cases, just like here, "basic principles of contract and consent require that result. Arbitration and delegation agreements are simply contracts, and, normally, if a party says that a contract is invalid, the court must address that argument before deciding the merits of the contract dispute." *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 71 for the proposition that "If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that [arbitration] agreement."). And the explicit text of Section 4 makes it clear that formation is a *jury* issue, "upon such demand the court shall . . . specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed." 9 U.S.C. § 4. As such, a jury trial is necessary to ascertain if the Defendant was running an illegal lottery.

Here, the contract was premised on an illegal lottery in that it had consideration, random chance, and a prize, rendering it an illegal lottery under Missouri law. *State ex Inf. McKittrick v. Globe-Democrat Pub. Co.*, 110 S.W.2d 705, 713 (Mo. 1937); Mo. CONST. art. III, § 39. In *State v. McEwan*, 120 S.W.2d 1098, 1099 (Mo. 1938), the following was a lottery:

> Names of persons who purchased admission tickets and names of persons who were not required to purchase admission tickets were recorded in the theater's registration book. The names of all persons were drawn by lot. The person whose name was drawn, whether present in the theater or outside the theater without an admission ticket, could claim the prize by promptly coming forward to the stage inside the theater.

*Mobil Oil Corp. v. Danforth*, 455 S.W.2d 505, 507 (Mo. 1970). "There, the element of consideration was found even though some of the participants, paid nothing for the right to participate." *Id.* So too in *Mobil Oil*, where the Missouri Supreme Court reasoned that a promotion where participants obtained bingo-like pieces to place on a game card was an illegal lottery, even though no purchase was necessary to receive a piece or card. *Id.* at 506.

And other courts have held that the provision of personal information as part of an

- 5 -

advertising promotion constitutes sufficient consideration to operate as an illegal lottery. *See, e.g.*, *Lucky Calendar Co. v. Cohen*, 117 A.2d 487, 489 (N.J. 1955) (bringing card with personal information to grocery store satisfied consideration element); *Gottlieb v. Tropicana Hotel & Casino*, 109 F. Supp. 2d 324, 330 (E.D. Pa. 2000) (same); *Cobaugh v. Klick-Lewis, Inc.*, 561 A.2d 1248, 1250 (Pa. Super. 1989) (registering for hole-in-one contest satisfied consideration); *Texas v. Ysleta del sur Pueblo*, No. EP-99-CV-320-KC, 2015 WL 1003879, at *14 (W.D. Tex. Mar. 6, 2015) (holding, in *dicta*, that consideration element was met by providing personal information). This is even more palpable here, where participants are not only required to provide their personal information, but do so to receive marketing messages and are further required to give up their substantive legal rights to a class action jury trial in a judicial forum.

Here, Acme's lottery requires at least two forms of consideration to participate and be eligible to receive the $599 gift card: (a) a participant must provide personal information, including a phone number and possible email address, inputted into an electronic system in order to receive future advertising, and (b) they (allegedly) bind their own future conduct and give up their substantive legal rights through the arbitration and jury trial and class action waiver clauses which are the subject of the terms and conditions. In fact, Missouri law authorizes a civil action arising for any losses incurred as a result of an illegal lottery. RSMo § 434.0.30. It follows that any civil action should also permit the restoration of any legal rights lost, including the right to proceed in a judicial forum, before a jury, and with the class action mechanism. Regardless, because an illegal or invalid contract is unenforceable and cannot be compelled to arbitration, the motion should fail here. *Kelly v. Aliera Companies, Inc.*, No. 6:20-CV-05038-MDH, 2020 WL 6877574, at *5 (W.D. Mo. Nov. 23, 2020); *ORF Const., Inc*, 239 S.W.3d at 687.

But even to the extent that this court finds that the Defendant's lottery is a lawful

sweepstakes, presumably if the provision of the Plaintiff's telephone number and agreements are not sufficient consideration to render it a lottery under Missouri law, the Defendant's motion to compel arbitration still fails. "It is hornbook law that if the consideration is sufficient to sustain a simple contract (if otherwise legal), it is sufficient to satisfy this third alleged element of lottery." *Lucky Calendar*, 117 A.2d at 495. Without consideration, the arbitration agreement is null and void, for there can be no contract without consideration, and agreements to arbitrate are simply creatures of contract. *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019) (affirming denial of motion to compel arbitration when contract lacked acceptance). Without consideration, no contract, including any corresponding arbitration provision, would have formed, thus providing an additional basis to deny the Defendant's instant motion here, even if the Defendant's promotion were not held to be an illegal lottery.

On this point, the cases of *Derriman* and *Kravets*, as well as the other authorities cited by the Defendant, are distinguishable. In both those cases, the text message programs formed valid contracts because they were not illegal lotteries: the element of randomness was missing, as *everyone* would receive a coupon. So too, for example in *Hennessey*, *Margulis*, and *Walsh*, where the arbitration contracts were premised on *purchases of goods and services* from a website retailer. As contrasted with the illegal lottery here, in those cases, a valid contract formed because there was an offer and acceptance of bargained-for consideration: the provision of personal information in exchange for a coupon, or otherwise as part of a lawful contract. That is plainly not the case here, where the Plaintiff's information and agreement was obtained in furtherance of an illegal lottery, in exchange for the *chance* to win a *prize*.

### B. TCPA-specific caselaw forecloses the arbitrability of the claims here.

Alternatively, even if the sweepstakes is legal and a valid contract formed, which are themselves both questionable propositions, the arbitration agreement is also unenforceable both

- 7 -

as a matter of federal law under the TCPA and under the Federal ESIGN Act. The purported agreement to arbitrate based on alleged consent to contact the Plaintiff is legally defective because it fails to constitute prior express written consent under the TCPA.

*First*, the arbitration agreement, and any corresponding consent obtained therefrom, is legally deficient because it did not comply with the requirements of the Federal E-SIGN Act, 15 U.S.C. § 7001(c). The FCC's regulations implementing the TCPA require a *signed* writing. 47 C.F.R. § 64.1200(c)(2); 47 C.F.R. § 64.1200(a)(2). Of course, one may elect to obtain electronic consent, including to arbitrate, in lieu of a signed writing. But if it does, that TCPA consent, and any associated arbitration agreement, must comply with the requirements under the E-SIGN Act. 47 C.F.R. § 64.1200(f)(9) (defining prior express written consent and requirements for electronic signatures); *see In re Rules 2012* ¶ 34 ("[C]onsent obtained in compliance with the E-SIGN Act will satisfy the requirements of our revised rule, including permission obtained via an email, website form, text message, telephone keypress, or voice recording."). Consent obtained in accordance with the E-SIGN Act's requirements may be sufficient TPCA consent; consent obtained in in violation of those requirements is a legal nullity because it is unsigned. *Id.*

Here, the legal disclosures required by the Act were not included in the websites or purported "Terms & Conditions" containing the purported arbitration agreement that Defendant identified. The record is devoid of any evidence even showing an *attempt* to comport with the Act's requirements. Indeed, no part of the website or the "Terms & Conditions" referenced in Defendant's motion indicated the hardware or software requirements for access to and retention of electronic records, nor was any consumer given the opportunity to provide their consent to sign and receive documents electronically. 15 U.S.C. § 7001(c)(1)(C)(i), (ii). Moreover, the website did not give any consumer a "statement" informing them of the procedures for granting

or withdrawing consent, or *any* of the other required consumer disclosures, including the very consent to electronic records themselves. 15 U.S.C. § 7001(c), (c)(1).

This was the very issue presented in *Mantha v. QuoteWizard.com, LLC*, No. CV 19-12235-LTS, 2021 WL 6061919, at *8 (D. Mass. Dec. 13, 2021), based on a substantially similar agreement to that proffered here. In *Mantha*, the Court held that the consent to make calls purportedly obtained via a website was legally deficient because it did not meet the requirements of the E-SIGN Act. *Id.* As a result, in *Mantha*, the court entered partial summary judgment *on behalf of a plaintiff* on the issue of consent. *Id.* As the Court held in *Matha*, such a failure to obtain the required E-SIGN disclosures is fatal to compliance with the E-SIGN Act and therefore cannot constitute express written consent. *Id.* Relatedly, a failure to do so is also dispositive of the enforceability of the arbitration provision as no legally-binding contract formed as an initial matter, let alone one purporting to provide consent to receive robocalls or arbitrate this dispute.

The Court in *Bradley v. DentalPlans.com* similarly denied relief to the defendant at summary judgment based on a nearly identical failure to comply with E-SIGN's requirements. No. CV 20-1094-BAH, 2024 WL 2865075, at *7 (D. Md. June 6, 2024). Therefore, even if the Court were to ignore Defendant's complete lack of evidence of Plaintiff's factual agreement to arbitrate, as outlined below, there is no basis to conclude that the purported agreement was legally sufficient and therefore there is no dispute as to consent, including factual issues of whether the Plaintiff consented to receive calls or not, for the arbitrator to arbitrate.

*Second*, the arbitration agreement fails because it is inconspicuous. The hallmark of the enforceability of a clickwrap agreement is the conspicuousness of its notice. *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002). An offeree is "not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose

contractual nature is not obvious." *Id.* Here, the website, by its very terms, buries the arbitration provision in a hyperlink to "Terms," among three hyperlinks on the page. And clicking the "Terms" link takes the customer to a page that contains no notice of an arbitration provision at the top, but rather requires scrolling down to the section entitled "Dispute Resolution." "Terms incorporated by reference are not effectively communicated unless the reference is clear and unequivocal, and the terms of the incorporated document are known or easily available to the contracting parties." *BSI Grp.*, 122 F.4th at 715. This fact *alone* renders the authorities cited by the Defendant distinguishable because each of them either actually presented the plaintiffs with the agreement to arbitrate itself, or at least provided conspicuous notice that such plaintiffs were agreeing to terms which contained an arbitration provision. Here, there is no language indicating assent to the Terms and the agreement to arbitrate therein. Even so, the submission of the phone number doesn't even indicate that the consumer is agreeing to anything at all.

The sentence uses the language "By submitting," but the big red button says, "ENTER TO WIN NOW." It does not say "Submit." This language misleading because the Defendant is obtaining marketing lists and arbitration agreements by running an illegal lottery. By clicking "ENTER TO WIN NOW," a reasonable consumer would not think they are agreeing to arbitrate claims consideration for entering the illegal lottery, let alone "submitting" anything. And there are three hyperlinks, and it is unclear which contains an arbitration provision. Nothing about the language on the website indicates the fact that the "Terms" contain an agreement to arbitrate *at all*. The fact that the Defendant is attempting to compel arbitration based on a "gotcha" clause is all the more obvious because the relevant terms are buried among three hyperlinks, two of which contain no arbitration provisions. The other links, which also works, unlike the link to "Terms," including Privacy Policy (the logical choice for someone concerned about intrusive calls) does

- 10 -

not even appear to mention an agreement to arbitrate. Sister Courts have rejected as unreasonable arbitration provisions when multiple links on a page but only one contains the clause. *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019) ("Users cannot be reasonably expected to click on every word of the sentence in case one of them is actually a link.").

This is not to mention the fact that, just like in *Rojas v. GoSmith, Inc*., another TCPA case "Defendant did nothing that drew attention to [the arbitration provision] . . . [and] [n]o evidence shows any indication that Plaintiff was advised to read the entirety of the webpage." 2020 WL 831585, at *4 (N.D. Ind. Feb. 20, 2020). As such, because the website did not draw notice to the arbitration provision on the text of the purported submission page, that provision is inconspicuous and unenforceable. Like in *Rojas*, nothing was said to Plaintiff to place a reasonable person on even inquiry notice that they are agreeing to binding arbitration. Courts in the TCPA context have uniformly rejected far less blatant "gotcha" tactics as a method of obtaining consent to arbitrate TCPA claims.

Courts have denied motions to compel arbitration when "the record as developed so far does not indicate that Plaintiff had been informed of the arbitration clause." *Schuchmann v. Great Am. Power, LLC*, No. 3:23-CV-1604, 2024 WL 219267, at *4 (M.D. Pa. Jan. 19, 2024); *Berman v. Freedom Financial Network, LLC*, 30 F. 4th, 849, 856 (9th Cir. 2022); *Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836, 841 (S.D. Ohio 2021) (holding that plaintiff had neither actual nor constructive notice of arbitration provision and therefore could not assent to it). Courts have also almost unanimously refused to compel arbitration in TCPA cases when premised on sweepstakes websites, as here.[1] Because any alleged agreement to arbitrate does not name Acme

---

[1] *E.g.*, *Berman v. Freedom Fin. Network, LLC*, No. 18-CV-01060-YGR, 2020 WL 5210912, at *1 (N.D. Cal. Sept. 1, 2020), *aff'd*, 30 F.4th 849 (9th Cir. 2022), and *aff'd*, 30 F.4th 849 (9th Cir. 2022); *Woodard v. SmartMatch Ins. Agency, LLC*, No. 23 CV 5246, 2024 WL 4252803, at *2 (N.D. Ill. Sept. 20, 2024); *Dahdah v. Rocket Mortg., LLC*,

and thus was legally sufficient for the purposes here of obtaining TCPA consent, because the website did not comply with E-SIGN's requirements, and because the website did not provide conspicuous notice of the arbitration provision, the Court must also deny the Defendant's motion on independent legal grounds, even if the Court were to hold, *arguendo*, that the Plaintiff agreed to arbitrate something as a factual matter, as will be addressed below.

    **C.**    **Plaintiff has provided evidence showing that he never visited the website and thus never agreed to arbitrate. Defendant's evidence does not name Mr. Morris.**

The Supreme Court has held time and time again that, despite the liberal policy favouring arbitration, "consent" remains a "first principle that underscores" all arbitration decisions. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019). Consent is essential under the FAA because arbitrators wield only the authority they are given. *Id.* The Defendant is not entitled to invoke any arbitration clause against Mr. Morris because the factual question of whether the Plaintiff even agreed as a matter of contract is called into issue. Under Section 4 of the Federal Arbitration Act, a jury *must* decide this as a threshold to the threshold arbitrability matter, and jurisdiction lies with the Court on this issue, as confirmed by the Supreme Court in *Coinbase*.

Consistent with the "general proposition" that "a contract cannot bind a non-party," *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 9 (1st Cir. 2014), "the FAA does not require parties to arbitrate when they have not agreed to do so," *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). The FAA commands that, before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute. 9 U.S.C. § 4; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). And, "[i]f the making of the arbitration

---

No. 22-11863, 2023 WL 11944898, at *9 (E.D. Mich. Nov. 17, 2023); *Gaker v. Citizens Disability, LLC*, 654 F. Supp. 3d 66, 72 (D. Mass. 2023); *Turner v. PillPack, Inc.*, No. 5:18-CV-66-TBR, 2019 WL 2314673, at *2 (W.D. Ky. May 30, 2019).

agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

In Missouri, the party arguing the existence of a valid contract to arbitrate bears the burden of proving the contract was formed, and that the *Plaintiff himself* agreed to be bound by the clause. *Whitworth v. McBride & Son Homes, Inc.*, 344 S.W.3d 730, 737 (Mo. Ct. App. 2011). As the party seeking to arbitrate, the Defendant bears the burden of demonstrating, at the same level as at summary judgment, not only that a valid arbitration agreement exists but also that the *Plaintiff himself* agreed to be bound by the clause. *See Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005). As explained above, the Defendant will be unable to meet this burden as its website is an illegal lottery and because it does not meet the other contractual requirements underlying consent under the TCPA. Defendant will *also* be unable to do so because the Plaintiff unequivocally denies ever having submitted his information to Acme's website. *GP3 II*, 35 F.4th at 1128 (8th Cir. 2022). And Defendant has presented no additional information or evidence to show that Mr. Morris *himself* visited Acme's website or submitted any information at all. All Defendant can claim is that *someone* submitted a telephone number and conducted a "double opt in" in 2022.[2]

At this stage, particularly as this case raises a factual challenge surrounding arbitrability, the Plaintiff is entitled to submit a declaration of his own in support of his position that he did not agree to arbitrate the dispute as an initial matter. *See Hesse v. Midland Credit Mgmt., Inc.*, No. 4:21-CV-00591-SEP, 2022 WL 503725, at *3 (E.D. Mo. Feb. 18, 2022). To be clear, the Plaintiff unequivocally denies ever having agreed to arbitrate. On face, and putting aside the Plaintiff's own declaration and evidence, there exist issues with the evidence proffered by the Defendant, including that the purported arbitration agreement doesn't even name the Plaintiff, or

---

[2] This was the same scenario the court considered, and rejected, in *Camping World*, *supra*. And, if Plaintiff was allegedly able to "opt in," there is no reason why he would not be able to "opt out."

anyone for that matter. The Plaintiff confirms these issues and independently verifies that he did not visit the website, had nothing to do with the visit, and thus did not agree to arbitrate anything. (Morris Dec. ¶ 7–13). These factual disputes doom Acme's assertion of arbitration.

Despite the Defendant's admission that it possesses no information as to the name submitted on the website, and the Plaintiff's own denials, Defendant's motion is rife with the false and unsupported assertion that the "Plaintiff" submitted *his* phone number to the Acme Tools website. But, under well-established TCPA and arbitration law, the Defendant must establish that the Plaintiff *himself*, and not someone else, agreed to arbitrate claims. *Starling v. OnProcess Tech., Inc.*, No. 1:23-CV-10949-JEK, 2024 WL 1258501, at *5 (D. Mass. Mar. 25, 2024) (denying motion to compel arbitration and holding non-signatory family member was not bound by arbitration agreement despite being listed as an alternate contact on account). It is also well established under the TCPA that consent is associated with the *called party* and *not* the *telephone number* at issue. *See, e.g., N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1166 (9th Cir. 2020). As such, an intent to contact *someone else*, who arguably consented to arbitrate, does not compel Mr. Morris to arbitrate claims to which he did not consent. *Id.* at 1167.

At least two parallel court decisions dictate that the Defendant's motion ought to be denied on the basis of the Plaintiff's declaration *alone*. The Middle District of Georgia's decision in *Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57 (CDL), 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019), is particularly instructive. There, a TCPA defendant sought to compel arbitration by contending, as here, that the plaintiff agreed to an arbitration provision as a result of his visits to the defendant's website. In finding no agreement to arbitrate existed, the court explained:

> Plaintiff presented evidence that he "did not visit www.bestautoinsurance.com" and that it would have been impossible for him to access the website in the manner Defendant says he did. . . .   Plaintiff stated that he "cannot know for certain who accessed" Defendant's website and input his information, but "[w]hat [he] do[es] know for certain is that [he] did

- 14 -

>   not visit www.bestautoinsurance.com." From this, a reasonable factfinder could determine that Plaintiff did not enter his personal information on Defendant's website or click "submit." So, a reasonable factfinder could conclude that Plaintiff did not assent to the website's terms, including the arbitration provision. Accordingly, there is a genuine fact dispute as to whether Plaintiff entered an arbitration agreement with Defendant, and the Court thus cannot conclude as a matter of law at this stage in the proceedings that the parties had a valid agreement to arbitrate. For this reason, Defendant's motion to dismiss in favor of arbitration is denied.

*Id.* at *1-*2 (cleaned up). The Court in *Conrad v. Camping World Holdings Inc.* reached a similar conclusion, reasoning that the factual question of whether or not the plaintiff opted in to receive text messages from the defendant on a website containing an arbitration provision was put at issue and denied a similar motion to compel arbitration. No. 4:24-CV-171-CLM, 2025 WL 66689, at *2 (N.D. Ala. Jan. 9, 2025). There, the court first agreed that its decision "as to whether an arbitration agreement exists is simply a matter of contract," and that when a party does not "sign or otherwise enter the contract, he cannot be bound by its terms." *Id.* The court noted that the defendant provided no evidence to controvert the plaintiff's declaration, as here, that he did not agree to arbitrate any claims because he did not own the telephone number at issue at the time of the alleged opt-in, and thus that the defendant could not "show the parties had a meeting of the minds about arbitrating claims related to the CWH text message service." *Id.*

Accordingly, Defendant has and will be unable to meet its burden of demonstrating even a genuine issue entitling the Plaintiff to wholesale denial of the motion. The court in *Conrad* did the same, holding as a matter of law that the defendant did not meet its burden of demonstrating a disputed factual issue with respect to the claimed provision to justify an arbitration trial. *Id.* And because the Plaintiff agreed to nothing, he did not agree to any class waiver provision.

## CONCLUSION

For all of the foregoing reasons, Defendant's motion should be denied in its entirety.

RESPECTFULLY SUBMITTED AND DATED this March 25, 2025.

>*/s/ Andrew Roman Perrong*
>Andrew Roman Perrong, Esq.
>Bar #333687PA
>Perrong Law LLC
>2657 Mount Carmel Avenue
>Glenside, Pennsylvania 19038
>Phone: 215-225-5529 (CALL-LAW)
>Facsimile: 888-329-0305
>a@perronglaw.com
>
>*/s/ Anthony Paronich*
>Anthony Paronich, Esq.
>Bar #678437MA
>Paronich Law PC
>350 Lincoln Street, Suite 2400
>Hingham, MA 02043
>Phone: 617-485-0018
>anthony@paronichlaw.com
>
>*Attorneys for Plaintiff and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I, Andrew Roman Perrong, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

DATED this March 25, 2025.

>*/s/ Andrew Roman Perrong*
>Andrew Roman Perrong, Esq.