**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| BOBBY MORRIS, individually and on behalf of all others similarly situated, | |
| Plaintiff | |
| v. | No. 4:25-cv-00020 District Judge Matthew T. Schelp |
| ACME ELECTRIC MOTOR, INC., D/B/A ACME TOOLS, | |
| Defendant. | |

**DEFENDANT ACME ELECTRIC MOTOR, INC.'S REPLY IN
SUPPORT OF ITS MOTION TO STAY THE CASE
PENDING ARBITRATION PURSUANT TO FAA SECTION 3**

## I.    Introduction

Although plaintiff Bobby Morris ("Plaintiff") attempts to paint himself as the victim of unauthorized text messages, the reality — as clearly set forth in the Motion to Stay and supporting Memo ("Memo") filed by defendant Acme Electric Motor, Inc. ("Acme Tools") — is that Morris is an opportunistic plaintiff[1] hoping Acme Tools forgot (and the Court will ignore) that he signed up to receive these text messages and agreed to arbitrate any related claims. When confronted with that reality, Plaintiff does not deny visiting Acme Tools' website, does not deny responding to Acme Tools' confirmatory text message, and does not deny receiving text messages from Acme Tools for years without complaint. Instead, Morris throws out a number of challenges supported by inapplicable case law, hoping that one will be enough for the Court to allow this case to proceed.

---

[1] Morris, a serial filer, has filed at least three other TCPA purported class action lawsuits in 2025 alone. *See Morris v. Sonic Industries Services, LLC*, Case No. 4:25-cv-00035-SRC (E.D. Mo.); *Morris v. Safilo America, Inc.*, Case No. 4:25-cv-00066-SEP (E.D. Mo.); *Morris v. Carshield LLC*, Case No. 4:25-cv-00441-SPM (E.D. Mo.).

Morris claims (with no specific factual support) that he did not agree to Acme Tools' arbitration terms, that Acme Tools' text messaging terms ("Messaging Terms") fail under the federal E-SIGN Act, and that the Messaging Terms are unenforceable because they were connected to an illegal lottery. As explained below, Plaintiff's claims are baseless.

As a threshold matter, Acme Tools reiterates that the Court need not (and should not) decide any of these issues. As set forth in the Memo, the Messaging Terms have a delegation clause indicating that "the arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement." (Dkt. #14 at 4). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 68 (2019). Accordingly, the Court should stay this case pending resolution in arbitration of these issues.

But even if the Court concludes that it must consider the arguments raised by Plaintiff, the Court should find that they lack merit.

## II. Acme Tools Has Provided Unrefuted Evidence that Plaintiff Intentionally Accessed Acme Tools' Website and Consented to the Text Messaging Terms Requiring Arbitration.

### A. *Plaintiff's general denial that he consented to Acme Tools' Messaging Terms does not create a triable issue of fact.*

Acme Tools has met its burden of proving that an agreement to arbitrate exists because the undisputed Spicer Declaration establishes that the Messaging Terms containing the arbitration provision were agreed to twice: first when Plaintiff's telephone number was entered on Acme Tools' website, and again when Plaintiff responded "Y" to the confirmatory text. (Dkt. #14, Ex. 1 at 7-9). In the Response, Plaintiff provides only a self-serving declaration containing general denials that he did not submit his telephone number to Acme Tools' website, and that he has never

seen any of Acme Tools' terms and conditions, including the arbitration provision. (Dkt. #21, Ex. 1). But Plaintiff, "cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests;" he "must identify specific evidence in the record demonstrating a material factual dispute for trial. . . . [S]elf-serving allegations and denials are insufficient to create a genuine issue of material fact." *Young v. Hoogland Foods*, *LLC*, 2020 WL 555106, at *2 (E.D. Mo. Feb. 4, 2020) (granting motion to compel arbitration because Plaintiff's self-serving denials of entering into the arbitration agreement were insufficient to establish a triable issue of fact); *see also Thompson v. Replacements, Ltd.*, 2024 WL 1253836, at *2 (E.D. Mo. Mar. 25, 2024) (rejecting general denial of accessing website and accepting terms); *Narcio v. G2 Secure Staff, LLC*, 2022 WL 2960021, at *4 (W.D. Mo. July 26, 2022) ("[A]mbiguous self-serving statements in a declaration, in the face of irrefutable evidence, do not create an issue of material fact" to preclude granting a motion to compel arbitration.); *Franklin v. Cracker Barrell Old Country Store*, 2017 WL 7691757, at *2 (E.D. Mo. April 12, 2017) (plaintiff's testimony that he did not recall reviewing or agreeing to arbitration agreement insufficient to rebut contrary specific evidence).

The lone Missouri case that Plaintiff cites in support of his uncorroborated general denials did not even address that issue. *See Hesse v. Midland Credit Mgmt., Inc.*, 2022 WL 503725, at *3 (E.D. Mo. Feb. 18, 2022). In *Hesse*, the court permitted limited discovery before deciding a motion to compel arbitration to explore whether an arbitration agreement applied to corporate affiliates of the defendant with whom plaintiff agreed to arbitrate. *Id*. This case is completely irrelevant here.

The other two non-Missouri cases that Plaintiff relies upon are factually distinguishable and actually support Acme Tools' position. *See Hobbes v. Apollo Interactive, Inc.*, 2019 WL 6878863, at *2. (M.D. Ga. Dec. 17, 2019) (plaintiff presented evidence that at the exact time he was alleged to have visited defendant's website he was driving to work and that he did not own a

Windows computer; the type of computer used to access defendant's website); *Conrad v. Camping World Holdings Inc.*, 2025 WL 66689, at *2. (N.D. Ala. Jan. 9, 2025) (plaintiff presented specific evidence the phone number used to access defendant's website was not owned by him at the time he allegedly opted in). In each case, the plaintiffs presented specific evidence to create a triable issue of fact, not simply general denials of visiting defendants' websites and opting in to the text messaging terms and conditions requiring arbitration. Plaintiff's general denials are insufficient to raise a factual question.

**B.    *Acme Tools has proffered unrebutted evidence establishing consent.***

Likely recognizing that his threadbare denials are inadequate, Plaintiff turns his focus to the facts presented in Acme Tools' Memo, arguing that Acme Tools has not demonstrated that it was the Plaintiff ***himself*** who accessed Acme Tools' website and agreed to the text Messaging Terms. But the cases cited by Plaintiff show that Acme Tools has easily cleared this hurdle. In *Starling v. OnProcess Tech, Inc.*, 2024 WL 125801, at *5 (D. Mass. Mar. 25, 2024), the court denied the motion to compel arbitration because the evidence demonstrated that someone other than the plaintiff signed the arbitration agreement. Similarly, *In N.L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1166 (9th Cir. 2020), the phone number that initially consented to receive promotional robocalls had been reassigned to a minor. But here, Plaintiff ***admits*** that the number at issue was his cellular telephone number at all relevant times. (Dkt. #21, Ex. 1.) Additionally, Plaintiff has not testified that he was not in possession of his cell phone or that he let anyone else use it on November 26, 2022, or thereafter. (*Id.*) Nor has he provided his whereabouts on November 26, 2022 to show that he could not have accessed Acme Tools' website; or provided any phone records indicating he did not send the confirmatory text opting in a second time on November 26, 2022 to receive text messages. *See Johansen v. Efinancial LLC*, 2022 WL 168170,

at *3 (W.D. Wash. Jan. 18, 2022) (rejecting general denials and recognizing evidence plaintiff could have presented). Plaintiff did not because he cannot.

Acme Tools has provided evidence, and Plaintiff does not deny that (1) he visited the Acme Tools website, (2) his number was entered on the website, (3) his cell phone received the confirmatory text message on November 26, 2022, and (4) he responded "yes" to receiving promotional text messages. (Dkt. #14, Ex. 1 at 7-9). In addition, Acme Tools has even more specific evidence that Plaintiff accessed Acme Tools' website. Significantly, Plaintiff's cell phone (which opted in a second time 13 seconds later to receive promotional text messages) periodically and continuously received text messages from Acme Tools between November 26, 2024 and December 21, 2024 before Acme Tools opted Plaintiff out. Supplemental Declaration of Dean Spicer, Exhibit A, §§ 3-4.[2] The weight of Acme Tools' evidence in contrast to Plaintiff's unsupported denials demonstrates the absence of a triable issue about Plaintiff having consented to the Messaging Terms.[3] And even if there were a triable issue, it would be one for the arbitrator to decide in light of the delegation clause. *See Henry Schein, Inc..*, 586 U.S. at 68 (2019)[4].

---

[2] Acme submits this Supplemental Declaration on reply to address allegations and arguments not in the Complaint and raised by Plaintiff for the first time in the Response.

[3] Plaintiff cites generally to three cases that are factually inapposite. *See GP3 II, LLC v. Litong Capital, LLC,* 35 F.4th 1124, 1125–26 (8th Cir. 2022) (arbitration agreement signed by employee without authority to bind company); *Whitworth v. McBride & Son Homes, Inc.*, 344 S.W.3d 730, 738-39 (Mo. Ct. App. 2011) (no offer and acceptance to arbitration agreement because the handbook containing the arbitration provision was not provided to plaintiff until one week after he signed the employment contract that did not reference arbitration); *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 548–49 (1st Cir. 2005) (affirming denial of the defendant's motion to compel arbitration because defendant employer could not produce evidence that the plaintiff employee ever saw arbitration policy enacted after employee's employment started).

[4] In opposition to Acme's argument that the issue of arbitrability should be decided by the arbitrator, Plaintiff cites Eighth Circuit cases that are distinguishable because the arbitration provisions at issue did not contain delegation clauses that required arbitrability to be decided by the arbitrator. (Dkt. #21 at 2.). In addition, he misinterprets *Coinbase, Inc. v. Suzuki*, 602 U.S. 143 (2024), which supports Acme's position. "In cases where parties have agreed to only one contract, and that contract contains an arbitration clause with a delegation provision, then, absent a

III.     **Acme Tools' Messaging Terms Are Enforceable Under the E-SIGN Act.**

Plaintiff argues that the Messaging Terms are unenforceable because the terms do not comply with the requirements of the federal E-SIGN Act, but this argument also fails.  (Dkt. #21 at 8.)  This argument lacks merit as well. "The FCC has determined that telemarketers may 'obtain prior express written consent using any medium or format permitted by the E-Sign Act,' including 'email, website form, text message, telephone keypress, or voice recording.'" *Thompson*, 2024 WL 1253836, at *2(citing *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 (Feb. 15, 2012) (the "2012 FCC Order")).  "The written agreement must include a 'clear and conspicuous disclosure' informing the registrant that '[b]y executing the agreement,' he or she agrees to receive telemarketing calls." *Id.*  Here, Plaintiff was presented with a clear and conspicuous disclosure of the terms and he provided his consent via a website form and via text message.

A.       ***Acme Tools' Messaging Terms Are Clear and Conspicuous.***

Plaintiff argues that the hyperlinks in Acme Tools' gift card giveaway and the arbitration language within the Messaging Terms are not enforceable because they are allegedly not sufficiently conspicuous.  (Dkt. #21 at 9.)   This argument lacks merit because federal courts in Missouri and elsewhere routinely enforce the terms of agreements when the agreements are accessible via hyperlink, including agreements with arbitration clauses.  (*See* Dkt. #14 at 9-10.)  Instead of responding to the litany of cases that Acme Tools cited to support its argument, Plaintiff merely states without analysis that none of the cases was applicable, which is incorrect.  Indeed, a court in this District analyzed a substantially similar text message consent protocol just last year and concluded that it is "sufficient to satisfy the signature and phone disclosure requirements."

---

successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration." *Coinbase, Inc.*, 602 U.S. at 152.

*Thompson*, 2024 WL 1253836 at *3.  Moreover, Plaintiff has not even attempted to differentiate the sign-up page at issue in this case from those found to be conspicuous in *Derriman v. Mizzen and Main LLC*, 710 F. Supp. 3d 1129, 1138-41. (M.D. Fla. 2023), and *Kravets v. Anthropologie, Inc.*, 2022 WL 1978712, at *4. (S.D. Fla. 2022).  In these cases, the plaintiffs signed up for marketing messages via a double opt-in process with almost identical marketing advertisement sign-up pages to the one Acme used.

Plaintiff's arguments to the contrary are also flawed.  Plaintiff contends that because Acme Tools' submission button displayed "ENTER TO WIN NOW" instead of "Submit," a reasonable consumer would not think they were making a submission and agreeing to the Messaging Terms. (Dkt. #21 at 10).  But a reasonable consumer would understand that they would be agreeing to the terms hyperlinked to the page when they entered their phone number, selected "ENTER TO WIN NOW," received an introductory text message, and responded "Y" to that text message to confirm text enrollment.  Plaintiff has presented no case law to the contrary.

Plaintiff relies on *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019), to argue that courts have found arbitration provisions unenforceable when the sign-up page contains multiple hyperlinks.  But Plaintiff misrepresents *Colgate*'s holding — the court actually determined that the hyperlinked terms were not sufficiently conspicuous to put plaintiffs on inquiry notice because there was no discernable difference between the hyperlinked text and the text without a hyperlink.  *Id.*  The number of links provided was not at issue, but rather the lack of any visual difference between the words that contained hyperlinks and those that did not.  The hyperlinks at issue in this case are distinct and conspicuous in that they are clearly underlined and are listed after the word "view" which directs consumers to look at the terms of the agreements they would consent to by submitting the form.  Moreover, Plaintiff is unable to differentiate this

case from *Thompson* where this District determined that the plaintiff consented to messaging terms even though the sign-up page contained three hyperlinks. *Thompson*, 2024 WL 1253836 at *3.

Finally, while Plaintiff listed various cases in a footnote indicating that courts have denied motions to compel arbitration in TCPA actions (Dkt. #21, n.1), none of those cases involved a double opt-in process and none of those cases was similar to the sign-up pages found in *Thompson*, *Kravetz* and *Derriman*. Instead, many of the cases cited by Plaintiff involved situations in which the hyperlinked terms appeared ***after*** the submission button. Because the Messaging Terms here were sufficiently conspicuous, they are enforceable.

**B.** *Acme Tools' Process Satisfies the Disclosure Requirements.*

Plaintiff further argues that Acme Tools failed to comply with certain disclosure obligations under the E-SIGN Act by allegedly not providing Plaintiff with "a 'statement' informing [him] of the procedures for granting or withdrawing consent, or any of the other required consumer disclosures" under 15 U.S.C. § 7001(c) including "the hardware or software requirements for access to and retention of electronic records." (Dkt. #21 at 8.) But the 2012 FCC Order sets forth the appropriate standard for determining the adequacy of consent to receive advertising text messages under the TCPA: whether the individual (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls or messages by or on behalf of a specific seller; (2) agreed to receive these calls and messages; and (3) signed the written consent without a requirement that the agreement be executed as a condition of purchasing a good or service. 2012 FCC Order at ¶ 32. No other disclosures are required, and no binding case law suggests otherwise.

The Spicer Declaration shows that Acme Tools met these requirements. First, Acme Tools provided Plaintiff with notice that by entering the gift card giveaway and providing his number,

he would be agreeing to receive future messages from Acme Tools. (*See* Dkt. #14, Ex. 1 ¶¶ 7-8.) The Messaging Terms themselves also clearly identify that the Plaintiff would be separately "agree[ing] to receive recurring automated promotional and personalized marketing text (*e.g.*, SMS and MMS) messages (*e.g.*, cart reminders) from Acme Tools, including text messages that may be sent using an automatic telephone dialing system[.]" (*Id.* ¶ 13, Ex. 2.) Second, Plaintiff twice agreed to receive these messages — once on the website and then via text. (*Id.* ¶¶ 7-10.) Finally, the Messaging Terms clearly state that "[c]onsent to receive automated marketing text messages is not a condition of any purchase." (*Id.* at ¶ 13, Ex. 2.)

These are the exact requirements that numerous federal courts have looked to in determining whether an agreement is enforceable and complies with the E-SIGN Act subject to the TCPA. *See, e.g., Thompson*, 2024 WL 1253836 at *3; *Johansen v. Efinancial LLC*, 2022 WL 168170, at *3 (W.D. Wash. Jan. 18, 2022) ("The FCC has determined that the "signed, written agreement" requirement may be fulfilled by submission of a website form). Applying this guidance, courts have found that a person can provide prior express permission by submitting a web form with personal information when the web form includes a notice that the person agrees to be contacted." (internal citation omitted); *Winner v. Kohl's Department Stores, Inc.*, 2017 WL 3535038, at *6-7 (E.D. Pa. Aug. 17, 2017) (dismissing plaintiff's TCPA claims because the disclosures complied with those required under the E-Sign Act and TCPA). Acme Tools complied with all of these requirements.

The two non-binding, outlier cases Plaintiff cites to the contrary are easily distinguishable. In *Mantha v. QuoteWizard.com*, the Magistrate Judge determined that the consent form was not valid under the TCPA and the E-SIGN Act because the form did not contain the defendant's name or the names of the defendant's clients who would be sending the solicitations to the plaintiff.

2021 WL 6061919, at *8 (D. Mass. Dec. 13, 2021). This is not the case with Acme Tools' Messaging Terms. The Court in *Mantha* went on to hold (incorrectly) that the requirements in 15 U.S.C. § 7001(c) of the E-SIGN Act must be met in a TCPA consent. *Id.* at *8. To be clear, the FCC has never required that the full E-SIGN Act provisions be somehow grafted onto the TCPA consent requirements. But even under the standard in *Mantha*, Acme Tools would prevail. The court in *Mantha* found the disclosures to be non-compliant because they contained no information about how to withdraw consent. *Id.* Acme Tools, however, described the method to withdraw consent both within the giveaway image as well as in the Messaging Terms.

In *Bradley v. DentalPlans.com*, 2024 WL 2865075, at *9 (D. Md. June 6, 2024), the Court determined that an audio recording of the consent disclosures was not sufficient under the E-SIGN Act and the TCPA because the TCPA requires a "written agreement" that includes a clear and conspicuous disclosure that the individual is authorizing the defendant to send prerecorded messages using an automatic telephone dialing system and that this agreement was not entered into as a condition of purchasing goods or services. *Id.* at *8. The problem for the defendant in *Bradley* was that the consent was obtained via audio and the court determined this was not a "written agreement." *Id.* at *9. But that is not an issue for Acme Tools. Accordingly, Acme Tools' Messaging Terms -- including the arbitration provision -- are enforceable under the E-SIGN Act.

## IV.    Acme Tools' Gift Card Giveaway Is Not an Illegal Lottery

Plaintiff spends a significant portion of his response arguing that Acme Tools' gift card giveaway that he entered into constituted an illegal lottery under Missouri law. (Dkt. #21 at 2-5). According to Plaintiff, this means the separately agreed to Messaging Terms are unenforceable. But there are at least two problems with Plaintiff's argument. First, under the <u>current</u> Missouri Constitution, a giveaway is not an illegal lottery if it can be entered without providing "money or

something of value," and that is the case here because entry was possible through the mail. Second, there is sufficient contractual consideration in the form of mutual obligations to arbitrate to support the arbitration provision contained in the Messaging Terms.

   A.    *No "Money or Something of Value" Consideration Was Required to Enter Acme Tools' Giveaway*

In Missouri, all lotteries must be run or authorized by the state. MO. CONST. ART. III § 39. All unauthorized lotteries are illegal, and under Missouri law, the elements of a lottery are: (1) consideration; (2) prize; and (3) chance. *Harris v. Mo. Gaming Comm'n.*, 869 S.W.2d 58, 62 (Mo. banc 1994). Consideration is defined as "money or something of value." MO. CONST. ART. III § 39(9). Acme Tools concedes that the gift card giveaway at issue includes a prize and chance, but what Plaintiff fails to acknowledge or even address is that "money or something of value" consideration is absent. As such, the gift card giveaway at issue is a legal sweepstakes and the arbitration provision contained in the Messaging Terms is enforceable.

While Plaintiff cites *State v. McEwan*, 120 S.W.2d 1098 (Mo. 1938), and *Mobil Oil Corp. v. Danforth*, 455 S.W.2d 505 (Mo. 1970), for the proposition that the element of consideration in establishing the existence of an illegal lottery can be found even in situations where no purchase is required, these cases interpreted an earlier version of the Missouri Constitution with a lower standard for proving consideration than what is now required. Specifically, in *Mobil Oil Corp.*, a promotion was considered an unlawful lottery because promotion entries were given to those purchasing gasoline at participating gas stations, even though entries could also be obtained without making a purchase. The Court refused to give effect to statutory language limiting the element of consideration to "in the form of money, or its equivalent, paid to or received by the person awarding the prize" because it conflicted with an interpretation of what constituted consideration for a lottery adopted in *McEwan* under the then-current version of Section 39(9) of

the Missouri Constitution, which the Court determined to prevent the Missouri General Assembly from enacting any statutes altering the definition of a lottery.  In *McEwen*, a bank night case, the promotion was considered a lottery even though patrons did not have to purchase a theater ticket to participate in the promotion.  These cases were all decided under the lens that all lotteries were per se illegal.

Section 39(9) of the Missouri Constitution before 1978 stated that the Missouri general assembly expressly lacked the power:

> . . . . to authorize lotteries or gift enterprises for any purpose, and shall enact laws to prohibit the sale of lottery or gift enterprise tickets, or tickets in any scheme in the nature of a lottery[.]

MO. CONST. ART. III § 39(9) (1977).  This is the version of the Missouri Constitution that the Missouri Supreme Court in *Mobil Oil* interpreted when it declined to adopt the view that valuable consideration was required for something to be a lottery.  455 S.W.2d at 508.

In 1978, Section 39(9) of the Missouri Constitution was amended to expressly permit sweepstakes like Acme Tools' gift card giveaway by heightening the definition of consideration to require money or something of value.  *See* MO. CONST. ART. III § 39(9) (1978) ("1978 Amendment").  The current version of Section 39(9), the version applicable to Acme Tools' giveaway (which Plaintiff wholly ignores), states in relevant part that the Missouri General Assembly lacks the power:

> Except as otherwise provided in section 39(b), section 39(c), section 39(e) or section 39(f) of this article, to authorize lotteries or gift enterprises for any purpose, and shall enact laws to prohibit the sale of lottery or gift enterprise tickets, or tickets in any scheme in the nature of a lottery; <u>except that, nothing in this section shall be so construed as to prevent or prohibit citizens of this state from participating in games or contests of skill or chance where no consideration is required to be given for the privilege or opportunity of participating or for receiving the award or prize</u> and the term **"lottery or gift enterprise"** <u>shall mean only those games or contests whereby money or something of value is exchanged directly for the ticket or chance to participate in the game or contest</u>….

Mo. Const. Art. III § 39(9) (bolded text in original, underline added for emphasis). This language was added in response to the *Mobil Oil* and *McEwen* cases, which construed consideration in broader terms to be co-terminus with contract consideration. Mo. HUR 9, Laws 1977. It was designed to address the sweepstakes issue. The Official Ballot Title stated as follows: "Defines lottery to permit games of chance where nothing of value is exchanged for the opportunity to participate or receive a prize." Mo. HJR 8, Laws 1977. As conceived, the 1978 Amendment was enacted, in part, to require valuable consideration for a game or contest to qualify as a lottery.

Although there are no Missouri cases subsequent to the amendment to Section 39(9) that address the consideration required to constitute an illegal lottery, the Missouri Attorney General's Office has issued an opinion that confirms both this intent and that Acme Tools' giveaway was permissible. In Opinion No. 31-85, the Attorney General determined that raffle events that provide for a no-purchase entry option do not require valuable consideration under the revised Section 39(9) even if individuals, as part of entering the raffle, were required to register their names or provide other personal information. *Id.* at 2.[5]

Similar to the promotion at issue in Opinion No. 31-85, the Giveaway Terms that Plaintiff agreed to required no money or something of value from the Plaintiff for an entry into the

---

[5] Not surprisingly, Plaintiff has not cited to any Missouri cases or authority after the 1978 Amendment. The absence of case law speaks volumes though. Moreover, the out-of-state cases that Plaintiff cites suggesting that requiring the disclosure of personally identifiable information ("PII") or mutually agreeing to arbitrate are sufficient consideration to operate as an illegal lottery are either not good law, do not involve lotteries or otherwise do not support his position. *See Lucky Calendar Co. v. Cohen*, 117 A.2d 487, 489 (N.J. 1955) (interpreting now-repealed gambling law outlawing lotteries in New Jersey); *Gottlieb v. Tropicana Hotel & Casino*, 109 F. Supp. 2d 324, 330 (E.D. Pa. 2000) (rejecting argument that plaintiff's use of her membership card at a casino constituted valuable consideration for an illegal lottery); *Cobaugh v. Klick-Lewis, Inc.*, 561 A.2d 1248, 1250 (Pa. Super. 1989) (the court did not even address PII or illegal lotteries); and *Texas v. Ysleta del sur Pueblo*, 2015 WL 1003879, at *14 (W.D. Tex. Mar. 6, 2015) (contempt hearing involving a Native American tribe's sweepstakes where court suggested alternative method of free entry rendered sweepstakes permissible but remanded for further findings).

giveaway. Acme Tools not only allowed entry for those who signed up for marketing messages (which is not money or something of value), they also provided consumers an additional method of entry via a no-purchase mail-in option. This is an avenue that any individual could utilize to enter the giveaway without signing up for promotional texts or agreeing to Acme Tools' Messaging Terms. The Giveaway Terms contain the following language: "There is no purchase necessary to enter the Sweepstakes. To request an entry, send via U.S. mail on a 3" x 5" post card your complete name, address, home telephone number (include area code) and date of birth, to ACME Tools, ATTN: Text Sign-up Contest[.]" Spicer Supp. Decl., Ex. A, §2. This sort of no-cost mail-in entry method has been routinely held to be too *de minimis* to constitute valuable consideration in other states as well.[6] This mail-in entry method also differentiates Acme Tools' giveaway from those in *McEwan* and *Mobil Oil* even if the Court were to ignore the amendments to Section 39(9) of the Missouri Constitution (which it should not). In *McEwan*, the entrant was required to enter their information into a movie theater's registration book and actively be present when the winner was selected. *McEwan*, 120 S.W.2d at 1099. Similarly in *Mobil Oil*, entrants had to physically go to a gas station to pick up the specific bingo-like pieces to play. *Mobil Oil*,

---

[6] *See Haskell v. Time, Inc.*, 857 F.Supp. 1392, 1405 (E.D. Ca. 1994) (finding that mail in postage was too de minimis to amount to consideration for an illegal lottery to exist); *Glick v. MTV Networks, A Division of Viacom Int'l, Inc.*, 796 F.Supp. 743, 747 (S.D.N.Y. 1992) (finding no consideration for an illegal lottery as the sweepstakes offered entry via mailed entry blank and toll-free telephone number); *Pepsi Cola Bottling Co. of Luverne, Inc. v. Coca-Cola Bottling Co., Andalysia*, 534 So.2d 295, 296-97 (Ala. 1988) (determining that the available no-purchase entry options including mail-in request and telephone made consideration absent); *Mid-Atlantic Coca-Cola Bottling Co., Inc. v. Chen, Walsh & Tecler*, 296 Md. 99, 105 (1983) (same); *Coca-Cola Bottling Co. of Wisconsin v. La Follette*, 106 Wis.2d 162, 168 (Wisc. Ct. App. 1982) (holding that no consideration exists for a lottery when sweepstakes required marked bottle caps for entry but facsimiles could be obtained via mail).

455 S.W.2d at 507.  Neither allowed for mail-in entry, and both of these required the individuals to physically go to the place of business hosting the giveaway in order to enter it.

    **B.**    *Notwithstanding the Absence of "Money or Something of Value" Consideration for the Giveaway, There Is Contract Consideration to Support the Messaging Terms*

The Missouri Supreme Court has determined that mutual promises between parties to arbitrate disputes are sufficient by themselves for a finding of consideration necessary to support the existence of a contract.  *Baker v. Bristol Care, Inc*., 450 S.W.3d 770, 786 (Mo. 2014) (determining that the mutual exchange of arbitration and arbitration-related promises is sufficient by itself for consideration to enforce a contract).  By agreeing to the Messaging Terms, both parties agreed to arbitrate any disputes, and while not the exchange of "money or something of value" as contemplated by Section 39(9) of the Missouri Constitution, it is sufficient consideration to support enforceability of the separately agreed-to Messaging Terms.  Additionally, the Messaging Terms were a separate obligation and agreement such that they are independently enforceable.  Plaintiff agreed to the terms of the Messaging Terms by opting in to receive them via his confirmatory text message.

## V.    Conclusion

There is no serious question that Plaintiff consented to receiving promotional text messages from Acme Tools, and that the Messaging Terms requiring arbitration should be enforced.  Plaintiff is serially filing TCPA purported class action cases as a for-profit endeavor, not because he was the victim of unsolicited robocalling that the TCPA was intended to protect.  Here, he signed up and separately consented to receive promotional text messages from Acme, and he should be required to arbitrate any dispute related to the Messaging Terms.  For the foregoing reasons, Defendant Acme Tools, respectfully requests that the Court stay this case pending arbitration.

Dated: April 18, 2025                    Respectfully submitted,

                                        By:    /s/ Blaine C. Kimrey
                                                One of Its Attorneys

Blaine C. Kimrey
bkimrey@vedderprice.com
Anthony J. Ashley (*pro hac vice*)
aashley@vedderprice.com
Bryan Clark (*pro hac vice*)
bclark@vedderprice.com
Dylan H. Cattie (*pro hac vice*)
dcattie@vedderprice.com
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T:  +1 312 609 7500

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 18, 2025, the foregoing **Defendant Acme Electric Motor, Inc.'s Reply in Support of Its Motion to Stay the Case Pending Arbitration Pursuant to FAA Section 3** was electronically filed with the Clerk of the Court using the ECF system that will send notification of the filing to all parties of record.

*/s/ Blaine C. Kimrey*